Walker *v.* Walker.

I. G. WALKER *v.* J. G. WALKER.

PRINCIPAL AND AGENT. *Ratification.* Where the principal is informed
of the acts of his agent, he must, if he dissents, do so and give notice
of it to the agent in a reasonable time, and if he does not, his assent
and ratification will be presumed. A principal whose conduct
amounts to a ratification of the acts of his agent cannot afterwards
avoid the effect of such conduct by declaring that he had no inten-
tion to ratify his agent's acts.

FROM FAYETTE.

Appeal from the Circuit Court.

No record to be found.

FREEMAN, J., delivered the opinion of the court.

This case was before this court at April Term, 1871.
It is not necessary to go into a detail of the facts
shown in the present record, as it is a case where, on
well settled principles, this court would not, probably,
be authorized to revise a verdict by a jury in favor
of either party on a correct charge of the law by the
Circuit Judge.

The only question to be decided is, whether there
is error in law in the instructions given by the court
below.

The following facts will serve to present the ques-
tion of error raised and relied on in argument.

In the early part of the year 1867 Iverson G.

Walker v. Walker.

Walker was the agent of John G. Walker for the collection of moneys due him from several parties in Fayette county, Tennessee. John G. Walker resided in Orange county, North Carolina, and Iverson G. in Fayette county, Tenn.

Before the 6th of February, 1867, the agent collected upwards of $2,000, bought a check from G. W. Trotter, then a leading commission merchant of Memphis, drawn on New York, and forwarded the same to John G. Walker, directed to Graham, a post office some ten or fifteen miles from the residence of said Walker. From some cause, not very satisfactorily shown, this letter, though dated February 5, failed to be received until about the 17th of April. On the 13th of April Trotter failed for a large amount, and the check became worthless. It is clear, however, that when John G. Walker received the check, he had no knowledge of the fact that Trotter had failed. On the 16th of April the agent wrote to his principal announcing Trotter's failure. This was received the evening of the 26th of April, as appears from a letter written on the 27th by John G. Walker in reply, in which he expresses a regret that the money had not been sent by express, as he had directed, as he says, "it would have saved both you and me much trouble." It appears from this letter that he had got the check cashed on the morning of the 26th by a merchant who was about starting to New York to purchase goods, and that evening went to him, stated the fact of Trotter's failure, and on his demand Walker had taken the check back. He then adds, that the

---

---

merchant had agreed "that he would take the check on for me, and if you (the defendant below) had not collected it, he would try to get it for me." He then adds, "I will let Mr. Vincent take the check and present it to the bank, if you have not collected it perhaps they will pay it to him. If he gets the money it will be all right." The check was accordingly sent to New York, and duly returned protested.

The question raised on this aspect of the case is, whether the principal had ratified the act of the agent in sending the check instead of the money by express, assuming that he had been so directed before he had forwarded the check, which is now contested on other evidence than what was before us on the former trial of the case in this court.

There is no question but that John G. Walker, at this time, had full knowledge of all the facts on which to act understandingly in the case.

His honor, the Circuit Judge, charged the jury substantially as follows on this subject. After stating to them that a ratification might be by express approval, or be implied from the conduct of the party, he tells the jury, if, after the facts were known, he, "within a reasonable time thereafter, communicated with the agent, and informed the agent that he looked to him for payment, or from his letter it is clearly inferable he looked to the agent for payment," it would not amount to a ratification. He then adds, "If, after information of Trotter's insolvency, the principal promptly, or within a reasonable time, communicated to the agent the fact that he looked to him

Walker *v.* Walker.

for payment, or if this is to be clearly infered from his communication, then his conduct would not amount to a ratification of the agent's act. The mere fact that he did not return the check promptly to the agent would not affect his right if the principal knew the check was worthless at the time, or if he distinctly intimates to the agent that he looks to him for payment." He then concludes by saying, " If by that act of sending the check to New York, to Gardiner, Bacon & Co., if the proof shows the fact to be so, you should be `of the opinion the principal intended to consider the check as his own, then the agent would be discharged, otherwise not."

While there is an apparent correctness in this portion of the charge, when separate propositions are looked at, yet, taken as a whole, it is erroneous, and calculated to mislead the jury, as applied to the facts of the case.

In the opinion reversing this case it is said: " If Walker had known the fact that Trotter was broke, and the check worthless at the time, and then had adopted it or retained it, that is, in the way as then appeared, he would clearly have been bound;" and in another part of the opinion it is said, in reference to the failure of Walker to obtain the money on the check (assuming he had sent it to New York without knowledge of Trotter's failure), " then he should and would be required promptly to repudiate it, and notify the agent of his dissent."

The rule is thus laid down by Chancellor Kent, vol. 2, p. 616, 12th edition : " Where the principal is

informed of what has been done, he must dissent and give notice of it in a reasonable time, and if he does not, his assent and ratification will be presumed."

We hold, then, that no mere intimation or inference was sufficient in a case like this to amount to a disaffirmance of the act of the agent, but that the disaffirmance must have been clear and unequivocal.

In the next place, we hold that where the question of ratification depends upon the acts and conduct of the party, as by remaining silent after a knowledge of the fact of violation of the authority given by the agent, or by taking the benefit of what has been done, and the like, that whatever may be his intention, if his acts are in affirmance of the thing done by the agent, as by retaining the check, and endeavoring to collect it himself, thus treating it as his own, after a full knowledge of the facts, as we have said, then such conduct would unquestionably amount to ratification. In other words, the principal could not intimate or use language even from which an inference might be drawn that he disaffirmed the act, and at the same time take control of the check, and endeavor to collect it by his own means, and then avoid the effect of his conduct as a ratification by asserting that it was not his intention to consider the check his own, although his acts and conduct were those of an owner of it, and one entitled to it.

He could not intimate to his agent, or even use language from which it might be infered that he looked to him for payment, and at the same time proceed with an effort to collect the check, and take the

Walker *v.* Walker.

chances of success, but on failure turn around and avoid the effect of his conduct by falling back on such intimation or inference. If he disaffirms the act done, he must dissent from it, and not retain the fruit of the act, and speculate on the chance of reaping its benefits by an effort to realize from it. He cannot look both to the agent and the fruit of the unauthorized act for his money, but must elect to rely on one or the other, and stand by this election, and do no act that fairly contradicts the election in either case. His agent has the right to draw the natural inference from his acts, not his intentions: See American Leading Cases, vol. 1, p. 719, edition 1871.

The theory of the charge we have quoted is contrary to these principles, and erroneous. It is proper to say that the opinion heretofore delivered in this case was based on a different state of facts, and went on the assumption that the check had been sent to New York without a knowledge of the failure of Trotter, and the argument is made in that opinion against the proposition that John G. Walker was bound, as by ratification, by the act of thus sending, without a full knowledge of the facts necessary for an intelligent election, approval or disapproval, affirmance or disaffirmance, of the act of his agent. It must be understood in reference to the facts then before the court, and be limited in its application to these facts. Without further criticism of the charge of the Circuit Judge, for the errors indicated the case must be reversed.